## McLELLAN v. PENICK.

### (Circuit Court of Appeals, Fifth Circuit. May 2, 1923.)

### No. 4051.

**1. Quieting title 27—Petition to remove cloud on land title is equitable.**

A petition praying for the removal of a cloud on title to real estate is equitable in its nature, and properly transferable to the equity side of the court.

**2. Deeds 35—Act of sale by private signature sufficient, if supported by undisclosed serious consideration.**

Under Rev. Civ. Code La. arts. 1764, 2439, 2440, 2442, requiring that an act of sale by private signature be for an adequate consideration, the actual consideration need not be expressed in the act of sale, but it is sufficient, under articles 1893, 1894, 1900, if the evidence in support of the conveyance discloses a serious consideration.

**3. Fraudulent conveyances 300(4)—Act of sale by private signature, reciting nominal consideration, held not sham, but supported by valuable consideration.**

Evidence *held* sufficient to warrant a finding that an act of sale by private signature, reciting a consideration of $5 for land of the value of $75,000, was not a sham or mere simulation, but, on the contrary, was supported by the valuable or serious consideration of the vendor's indebtedness to the purchaser in a sum approximating the actual value of the land.

**4. Quieting title 44(2)—Acts and declarations of vendor not admissible against owner of record.**

Where an act of sale by private signature was promptly recorded, in an action by an execution creditor of the vendor to remove as a cloud on his title the record of such act of sale, evidence that the vendor had made statements or declarations of ownership subsequent to his execution of the act of sale was properly excluded; the purchase by such creditor at the execution sale being necessarily made in reliance on the record title.

**5. Estoppel 70(1)—Purchaser holding title of record not estopped by carelessness of vendor to specifically assert ownership.**

The record owner of property cannot be deprived of his title, or estopped to assert his title, merely by carelessness or equivocal acts, which did not deceive or mislead others to act to their injury, and where creditors of vendor, who had parted with title by an unrecorded act of sale by private signature knew of such record, but did not make the record purchaser party to their suits against the vendor, they could not urge that the purchaser was estopped to assert his record title, because of his failure to disclose his ownership in certain correspondence, since at all times his ownership was disclosed by the record.

**6. Execution 142, 224—Sale of divisible property as entirety to satisfy judgment debt void.**

Where a plantation was unincumbered and easily divisible, but was nevertheless sold as a whole to satisfy an aggregate indebtedness so small as to be grossly disproportionate to its value, the levy was excessive, and the sheriff's sale properly voided in equity.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in equity by Charles McLellan against Frank J. Penick. Decree for defendant, and plaintiff appeals. Affirmed.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Alexis Brian and Harold A. Moise, both of New Orleans, La. (Arthur B. Hammond, of New Orleans, La., on the brief), for appellant.

Arthur A. Moreno, of New Orleans, La. (Gustave Lemle, Selim B. Lemle, and Louis G. Lemle, all of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. The appellant filed his petition in the state district court for St. Charles parish, La., alleging himself to be the owner of a tract of land, and praying for the cancellation, as a cloud upon his title, of the inscription of an act of sale thereof, dated March 30, 1917, and recorded in the public records of said parish April 3, 1917, from J. H. Harberts and wife to Frank J. Penick, appellee. Upon appellee's petition the cause was removed to the United States District Court for the Eastern District of Louisiana, and over appellant's objection was transferred to the equity side of the court. The appellee answered, and by petition in reconvention prayed to be restored to possession of the property, and for general and equitable relief.

J. M. Harberts and Frank J. Penick, the appellee, live in Illinois. Harberts has been engaged in buying and selling real estate, and testified that his interest in lands in Illinois and Missouri was worth approximately $240,000. Penick is a lawyer and banker, and testified that he was worth about $400,000. In his real estate transactions since 1908, Harberts has frequently borrowed money from Penick. The property involved in this suit is a tract of land known as the Louisa plantation, having a frontage of about one mile on the west bank of the Missississippi river, 18 miles above New Orleans, and extending back 3 miles, more or less, between diverging lines, and containing about 2,-600 acres. The lowest estimate of its present value is $75,000. Harberts purchased this plantation in 1912 for $60,000, $12,000 of which he paid in cash, and secured the balance by mortgage, and borrowed from Penick at various times, up to and including the year 1916, $20,-650, which he applied on the purchase price. In March of 1917 Harberts applied to Penick for an additional loan. At that time the parties had a settlement of their accounts, which showed an indebtedness by Harberts to Penick of approximately $75,000, in payment of which Harberts and wife conveyed to Penick the Louisa plantation. The act of sale was under private signature, and recites a consideration of only $5.

Neither of the parties ever lived on the plantation. Penick had only visited it three or four times, and he left the management of it to Harberts. It appears that Harberts, in August, 1917, employed one Jules J. Delvaille to live upon the plantation and to rent or lease portions or all of it. Delvaille's compensation was to be $30 per month and commissions upon receipts from rents. Thereafter a number of leases were signed by Delvaille as agent for Harberts; but in the fall of 1918 a lease of the whole of the plantation to one Montz was executed by Mr. A. A. Moreno, an attorney in New Orleans, as agent for Harberts. The lease was for the years 1919 and 1920, for the con-

sideration of $14,400, represented by notes payable to Harberts. Montz attached to his lease letters from Penick to the effect that the act in renting the land was by his authority and in accord with an understanding between him and Harberts, and would be carried out. The letters were attached to the lease and recorded with it in the clerk's office. Other than upon the lease to Montz, Delvaille continued to collect rents and to account for them to Harberts, who paid them over to Penick. Harberts also made inquiries in New Orleans as to whether he could obtain a loan secured by mortgage on the plantation.

In November, 1919, Penick, acting through Moreno, paid off a balance of $17,642.20 upon a mortgage to the Pan-American Life Insurance Company, executed by Harberts prior to the act of sale by private signature. Penick also paid the taxes for the years 1917 to 1920, inclusive, amounting to approximately $3,000. In 1921 one Harry O. Penick, a relative of the appellee, sued Harberts and secured service upon him by writs of attachment upon the Louisa plantation. This suit resulted in a judgment for less than $1,100 against Harberts, to satisfy which the plantation was about to be sold, when Moreno notified Penick and paid off the judgment at the latter's request and for his account. Moreno secured an assignment to the appellee of this judgment, including any rights under it in any property of Harberts in St. Charles parish, and then advised the appellee to have Harberts and his wife execute an act of sale correcting that of March 30, 1917, by reciting the true consideration, and at appellee's request prepared such an act, and it was executed by Harberts and wife, and in November, 1919, sent to the clerk of the court of St. Charles parish to be recorded. The clerk refused to record this act of sale, because canceled internal revenue stamps were not attached.

Delvaille testified that he did not learn of the act of March 30, 1917, until in April, 1918, when he was informed by tenants who refused to pay rent; that he left the plantation in December, 1920. In June of 1921, Delvaille brought a suit for $1,666 against Harberts for a commission which he claimed upon a sale, which was never made, for commissions upon rents, and for a balance claimed by him on salary. At the same time the partnership of Delvaille & Burke sued Harberts for a commission of $782.50 upon a lease of 250 acres executed March 15, 1921. Writs of attachment were issued against the Louisa plantation, and judgments entered for the amounts claimed in October, and a sale of the plantation was made by the sheriff to satisfy these two judgments on December 10, 1921. McLellan accompanied his attorney to the county seat, where the land records were examined. The clerk exhibited the curative act of sale, which he had in his possession. Notwithstanding, the appellant bid in the plantation for $27,500, and took possession of it. The judgments were satisfied, and the balance was retained by the curator ad hoc, but has not been claimed, either by Harberts or Penick. Penick had no notice of either of these two attachment suits until after the appellant became the purchaser at the sheriff's sale. Harberts was advised of each of the suits, but did not defend any of them, for the reasons assigned by him in his testimony that he was not the owner of the plantation or any other property in Louisiana, and was not indebted to any of the plaintiffs. He further

testified that, after the act of sale by private signature, the only connection he had with the plantation was as Penick's agent.

The court sustained objections to offers to prove that Harberts claimed to own the Louisa plantation subsequently to his conveyance to Penick, and refused to grant a rehearing upon the ground of newly discovered evidence to the same effect. The District Judge entered a decree dismissing appellant's petition, and quieting the appellee in his title to the property.

[1] Appellant's petition, which prays for the removal of a cloud upon the title to real estate, is, of course, equitable in its nature; and it was therefore not error to transfer the cause to the equity side of the court.

[2] Articles 1764, 2439, 2440, and 2442 of the Louisiana Revised Civil Code are relied upon to sustain the proposition that the act of sale by private signature is a nullity, for the reason that the recited consideration was out of all proportion to the value of the property, and because there was no actual delivery. It is, of course, true that $5 would not be an adequate consideration for the valuable property here involved. But the actual consideration need not be expressed, even in an act of sale by private signature; it is sufficient if the evidence in support of the conveyance disclose a serious consideration. Louisiana Revised Civil Code, arts. 1893, 1894, and 1900; Jackson v. Miller, 32 La. Ann. 432; King v. Atkins, 33 La. Ann. 1057; Dickson v. Ford, 38 La. Ann. 737; Read v. Hewitt, 120 La. 288, 45 South. 143.

[3, 4] The evidence shows conclusively that the conveyance of 1917 was not a sham or mere simulation, but, on the contrary, was supported by the valuable or serious consideration of Harberts' indebtedness to Penick of approximately $75,000. The act of sale was recorded promptly, and it was not necessary for the appellee to proclaim his ownership; any one interested could ascertain it by an examination of the public records which are designed for the purpose of disclosing titles to land. In no just sense can it be said that Delvaille's possession was adverse to the owner. Even if it be conceded that Harberts claimed the property, that circumstance could not operate to deprive the appellee of his title without a hearing; and we are therefore of the opinion that the District Judge correctly refused to permit proof of any statements or declarations of ownership made subsequently by Harberts, and properly denied the motion for a rehearing. The appellant was not misled by any such statements, because he bought in reliance solely upon the record title. Evidence that Harberts sought to obtain a loan upon the security of the plantation is not sufficient to overthrow the conclusion of the District Judge that a valid sale was actually made. Doubtless it is a proper inference from the evidence that Harberts entertained the idea of repurchasing the property, and, if so, it was but reasonable that he would be making efforts to enable him to do so. But it is almost inconceivable that Harberts would have neglected to defend the attachment suits, if he had been the owner of the plantation.

[5] It is argued that the appellee should have disclosed his ownership in his letter replying to an inquiry on behalf of Montz, the exact

nature of which is not disclosed, as to the validity of the lease executed by Moreno as agent for Harberts. The letter can only be construed as confirming the authority of Harberts and Moreno. It does not purport to relate to title, and is not inconsistent with appellee's ownership of the plantation. Moreno, as is perfectly apparent from the evidence, was not informed as to the exact nature of appellee's interest in the Louisa plantation, but that he knew appellee had some interest in it is equally apparent from the facts that as attorney he paid the Harry O. Penick judgment and the balance of the mortgage indebtedness. The owner of property cannot be deprived of it, or estopped to assert his real interest in it, by mere carelessness or equivocal acts which do not deceive or mislead others to act to their injury. Delvaille and Burke, so far as the evidence shows, were not deceived or misled. They had knowledge of the recorded act of sale, and were careful not to make the appellee a party defendant to their suits. The appellant, purchaser at the sheriff's sale, relied solely upon the recorded leases, and chose to ignore entirely the recorded act of sale by private signature, the subsequent act of sale made for the sole purpose of correcting the record by reciting the actual consideration, and Harberts' indifference and failure to defend the suits.

[6] The plantation was unincumbered, and was easily divisible. It was unnecessary to sell the whole of it. Under these circumstances, which surrounded the attachment suits and the sheriff's sale, and considering the small aggregate amount of the judgments as compared to the value of the property, we are of opinion that the levy was so excessive as to make it the duty of a court of equity to declare void the sheriff's sale and deed to the appellant. 17 R. C. L. 206; Fortin v. Sedgwick, 133 Iowa, 233, 110 N. W. 460, 12 Ann. Cas. 337; Williamson v. White, 101 Ga. 276, 28 S. E. 846, 65 Am. St. Rep. 302; Forbes v. Hall, 102 Ga. 47, 28 S. E. 915, 66 Am. St. Rep. 152.

The decree of the District Court is affirmed.