205 So.2d 86 (1967)
Succession of John J. RAMP, Sr.
No. 2744.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 1967.
Rehearing Denied January 9, 1968.
Writ Granted February 19, 1968.
*87 Maurice L. Burk, New Orleans, for the succession-defendant-appellee.
James David McNeill, New Orleans, for Mrs. Ramp, Individually and as Executrix.
William F. Wessel, New Orleans, for appellants.
Lemle & Kelleher, H. Martin Hunley, Jr., New Orleans, amici curiae.
Before McBRIDE, REGAN, and BARNETTE, JJ.
REGAN, Judge.
This is an appeal from a judgment of the lower court which ordered four of the five heirs of the decedent, John J. Ramp, Sr., to accept their forced portion of the succession of their father subject to a usufruct in favor of his third wife, Mrs. Mildred M. Ramp. The judgment appealed from further refused to remove Mrs. Ramp as executrix of the succession, decided that a certain boat was community property and therefore it should be included in the *88 assets of the succession, ratified retroactively the unauthorized sale of the boat for the amount of $2,500.00, and amended the executrix's final account to include the sum of $397.29, which was on deposit in a local bank when Ramp's death occurred, and amended the final account to include the executrix's usual fee.
The record discloses that the decedent, John J. Ramp, Sr., was married three times. Of his first marriage, one child was born, namely Myrtle Ramp Breland. In the course of his second marriage, four children were born, John Ramp, Jr., Salvadore Ramp, Margaret Ramp Rossi, and Delphine Ramp Puderer. No children were born of the decedent's third marriage to the executrix herein, Mildred Machin Ramp.
In a will dated October 2, 1965, the decedent made the following testamentary disposition, which forms part of the subject matter of the dispute which is now posed for our consideration.
"I will and bequeath the usufruct of all which I may die possessed, both real and personal, including both community and separate property, to my wife Mildred Machin Ramp, during her life. I will and bequeath the disposable portion of my estate jointly and in equal shares to Salvadore Ramp, Bella Toups and Willis Breland, Jr., subject to the usufruct in favor of my wife. I will and bequeath the forced portion of my estate to all of my children, share and share alike, subject to the usufruct in favor of my wife."
The testator appointed his third wife, Mildred Ramp, as his executrix.
Subsequent to the opening of the succession, the four heirs of the decedent born of his second marriage filed a suit to annul the will predicated upon their father's mental incapacity and upon the assertion that he and his third wife lived together without having been legally married.
Following lengthy negotiations between the attorneys for the succession and the attorneys for the heirs, a settlement agreement was entered into by all parties concerned except Mrs. Breland. Under the terms thereof, the four heirs who had endeavored to annul the will were to receive $1,000.00 in cash from the succession, and one of the heirs, Salvadore A. Ramp, was to receive a remission of attorney's fees and interest on a judgment obtained against him by the succession in the First City Court of New Orleans. In return, the four heirs of the second marriage bound themselves to dismiss their nullity suit with prejudice, agreed to accept the succession of their father in conformity with the conditions set forth in his last will, and finally, they agreed not to contest the decedent's will for any reason.
This settlement was submitted to the district judge on joint petition of the parties thereto to approve and homologate, and it was certified by their affidavit. It subsequently was advertised in accordance with law, and later it was homologated by a judgment of the lower court.
Near the end of the administration of the succession, the executrix filed a rule against the heirs to show cause why they should not be put into possession thereof in accordance with the terms of the will. The heirs, in the meantime, had employed new attorneys, and they now opposed the executrix's rule for the reason that the will impinged upon their forced portion, contrary to Civil Code Articles 1493 and 1499, in view of the fact that their forced portion was burdened with a usufruct in favor of the decedent's third wife. A similar rule was filed by Myrtle Ramp Breland, who sought to have the usufruct of her share of the forced portion declared a nullity. In addition thereto, the heirs filed a motion ordering the executrix to show cause why she should not be removed from her office for the reason that she sold a movable asset of the estate without prior court approval and that she concealed and *89 failed to include in the descriptive list a bank account which constituted a community asset.
From a judgment against them, which we have delineated hereinabove, the heirs have prosecuted this appeal.
The law is well settled and all parties hereto agree, that in the absence of a valid agreement to the contrary, an heir is entitled to receive his forced portion free of any usufruct whatsoever, with the exception of the usufruct of the surviving spouse provided for in Article 916 of the Civil Code. It is clear in this instance, however, that Article 916 is not applicable, and it is conceded by all of the litigants that the heirs of the decedent by his second marriage would be entitled to their forced portion free and clear of the executrix's usufruct, if they had not signed and homologated the agreement referred to hereinabove.
The heirs of the second marriage insist that the contract which they signed and homologated is nevertheless subject to recision on the ground of lesion beyond one-fourth of the true value of the property. As authority for this contention, they point to the articles contained in Section 7 of Chapter 12 of Title I Book III of the Louisiana Civil Code dealing with the recision of partitions of successions. The relevant articles read:
C.C. Art. 1397. "Partitions made, even with persons of full age, may be rescinded, like other covenants, for radical vices, such as violence, fraud or error."
C.C. Art. 1398. "They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the recission, that such lesion be of more than one-fourth part of the true value of the property."
C.C. Art. 1402. "The action of the recission mentioned in the foregoing articles takes place in the cases prescribed by law, not only against all acts bearing the title of partition, but even against all those which tend to the division of property between coheirs, whether such acts be called sales, exchanges, compromises, or by any other name." (Emphasis added.)
Both in brief and in oral argument before this court, all of the litigants concede that the value of the usufruct far exceeds one-fourth of the actual value of the property. Consequently, counsel for the executrix and for the succession rely, as did the trial judge in his reasons for judgment, upon Article 3078 of the Louisiana Civil Code which provides that.
"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."
Briefly, they argue that the agreement was a transaction or compromise which has the effect of law between the parties, and therefore, it is not subject to an action for recision. They further insist that Article 1402 is not applicable because the agreement executed herein was a compromise, and did not effect a partition or division of the property. On the contrary, they assert that the agreement merely established and settled the status quo under the will, thus making Article 1402 inapplicable.[1]
A thorough analysis of the relevant authorities discloses that this case is encompassed by Article 1402 of the Civil Code, and not by Article 3078. Article 1402 deals specifically with the recision of partitions in succession proceedings, while Article 3078 deals with compromise agreements in general. It is too well settled to *90 require citation in support thereof that when two articles of the Civil Code conflict, or appear to conflict, the specific article will be given precedence and will be enforced in preference to the more general provision. In the case of Williamson v. Amilton,[2] the organ for the court reasoned that Article 1440, now designated in the Civil Code of 1870 as Article 1402, was an exception to the rule of the finality of compromise agreements between the parties. The Williamson case involved the partition of community property and not the partition of succession property. Therefore, the application of the rationale thereof is even stronger in this case in view of the fact that Article 1402 is contained in that portion of the Civil Code which specifically deals with the recision of partition agreements in successions, whereas, to reiterate, in the Williamson case community rather than succession property formed the subject matter thereof.
Since it is conceded by counsel that the usufruct in favor of the executrix constitutes lesion beyond one-fourth in violation of Articles 1397, 1398 and 1402 of the Civil Code, it is subject to recision on the ground of lesion irrespective of any agreement executed to the contrary, be it designated as a transaction, compromise, or sale.[3]
We are convinced that the argument of the attorney representing the succession, who has endeavored to establish that the contract did not divide or partition the succession assets, is not well taken. By virtue of the agreement, the following partition or division was actually achieved. First, the third wife of the decedent received a lifetime usufruct over the entire estate, to which she was not entitled under the laws of forced heirship. Second, the children of the decedent's second marriage received their forced portion impinged upon contrary to their absolute rights under the law of this state. Third, the child of the first marriage of the decedent received her forced portion free and clear of the usufruct. Fourth, the children of the decedent's second marriage were to receive $1,000.00 to be paid by the succession, together with the forgiveness of a small amount of interest and attorney's fees on a judgment which the succession had obtained against Salvadore Ramp.
In any event, the agreement obviously divided and partitioned the succession property in a manner different from that enunciated in the law of forced heirship. Under these circumstances, it is evident that the "compromise agreement" is subject to rescission for lesion beyond one-fourth in conformity with the rationale emanating from Article 1402 of the Civil Code.
In view of the fact that Myrtle Ramp Breland, the child of the decedent's first marriage did not sign the "compromise agreement", and in view of her opposition to being placed in possession of her forced portion subject to the usufruct of the surviving widow, the judgment of the lower court granting her forced portion free and clear of the usufruct is obviously correct.
We are also in accord with the lower court's judgment in refusing to remove Mrs. Ramp from her position as executrix of the succession. In order to reverse this part of the judgment, the heirs initially contend that she acted contrary to her fiduciary obligation in selling a 1960 twin engine 27 foot Chris Craft for approximately $2,500.00 without prior court authorization, when this property was valued on the succession's descriptive list for the sum of $4,500.00. In the course of the trial of the rule, Mrs. Ramp testified that the boat had been damaged by Hurricane "Betsy", and was not in running condition and that when the unauthorized sale occurred, another hurricane *91 was threatening, and it was her honest opinion that the prudent thing to do was to sell the boat while she had an opportunity to do so. We were impressed by the fact that there was no attempt on the part of the executrix to conceal the sale of this property or to convert the proceeds thereof to her own use. While she did make an effort to prove that the boat was her separate property, she nevertheless maintained in her possession a check in the amount of $2,500.00 which she received from the sale of the craft. The lower court found, however, as a matter of fact that the boat was community property and should be included among the assets of the estate. In any event, we do not see any reason for the removal of Mrs. Ramp as testamentary executrix. On the contrary, we feel that her actions, while not in keeping with the very best practice to be exemplified by one occupying a position of trust, they were taken in good faith, and resulted in no injury to any of the heirs.
The second reason urged for her removal was the asserted concealment of a joint bank account in the National American Bank of New Orleans, which contained $393.27 on the date of Ramp's death. The amount of this money did not appear on the sworn descriptive list of the succession assets nor in the executrix's final account. The evidence introduced in favor of Mrs. Ramp indicates that the money was drawn out by her for living expenses, probably through an oversight. Moreover, since Mrs. Ramp was the owner of one-half of the account, and the nominal usufructuary of the other one-half, that is, until the time of the opposition filed by the heirs, we are not impressed by the argument that an intentional effort was made to conceal a substantial succession asset. Moreover, it was shown that the account was listed in the federal inheritance tax return filed by the estate, and we are convinced that the lower court properly exercised its discretion in refusing to remove Mrs. Ramp on this ground.[4]
For the foregoing reasons, the judgment of the lower court is reversed insofar as it requires the heirs of the decedent's second marriage, John Ramp, Jr., Salvadore Ramp, Margaret Ramp Rossi, and Delphine Ramp Puderer, to accept the forced portion of the decedent's estate subject to the usufruct in favor of Mildred Machin Ramp.
In all other respects, the judgment of the lower court appealed from is affirmed, and the case is now remanded to the lower court for additional proceedings in conformity with the rationale expressed herein and for such other litigation as the nature of the case may ultimately require.
The appellees are to pay all costs of this appeal.
Reversed in part, affirmed in part, and remanded.
NOTES
[1] In this connection, counsel also rely upon the rationale of Civil Code Articles 1404-1406 and 1407.
[2] 13 La.Ann. 387 (1858).
[3] See Schrock v. Bolding, 171 La. 929, 132 So. 504 (1931).
[4] See Succession of Mulqueeny, La.App., 156 So.2d 317 (1963).