BARHAM, Justice.
 

 This case involves the effect to be accorded a compromise agreement between some of the forced heirs and the executrix of a succession, who is also a legatee.
 

 John J. Ramp, Sr., died testate in 1965, survived by his third wife, Mildred Machín Ramp, and by four children of a second marriage and one child of a first marriage. The decedent’s will attempted to give the usufruct of all of his property to his third wife, who was also named executrix, bequeathed the disposable portion of his estate to certain named legatees, and provided :
 

 “* * * I will and bequeath the forced portion of my estate to all of my children, share and share alike, subject to the usufruct in favor of my wife.”
 

 After the succession was opened and Mrs. Mildred Machín Ramp confirmed as testamentary executrix, the four children of decedent’s second marriage filed suit against the executrix to annul the will, primarily alleging testamentary incapacity. Following negotiations concerning this attack upon the will, the executrix and these four forced heirs entered into a compro
 
 *665
 
 mise agreement. However, the contract of compromise signed by the parties not only sought to dismiss the nullity suit with prejudice but attempted to bind the four forced heirs “to accept the succession of their father in accordance with the terms and conditions stated in his last will * * *” and “to file no further opposition to or contest of decedent’s will on any grounds whatsoever”. An inconsequential amount when compared to the value of decedent’s estate was paid to these heirs by the succession in the compromise agreement. After the filing of a joint petition and advertisement, the district court approved the compromise insofar as it dismissed the suit to annul the will.
 

 In response to a later rqle filed by the executrix asking the heirs to show cause why they should not be put in possession of decedent’s property in accordance with the terms of the will, the forced heirs filed opposition on the ground that the dispositions of the will impinged upon their legitime, in contravention of Civil Code Article 1493. Decedent’s third wife is not benefited by Article 916 of the Civil Code, and it is apparent that any attempt to burden the legitime of the children with a usufruct in her favor does in fact impinge upon their forced portion since the will made a specific bequest of the disposable portion of the decedent’s estate.
 

 The trial court dismissed the opposition of the four forced heirs who had been parties to the compromise, agreement, and placed them in possession in accordance with the will and subject to the third wife’s usufruct. The trial court, however, placed the child of the first marriage, who had not been a party to the lawsuit or the compromise, into full possession of her forced portion.
 

 On appeal by all five children the Court of Appeal, Fourth Circuit, reversed the judgment of the lower court in part, holding that the four children of the second marriage did not have to accept their forced portion subject to the usufruct in favor of the third wife. See 205 So.2d 86. The Court of Appeal held that the compromise agreement tended to divide the succession and was therefore an act of partition which was subj ect to rescission for lesion beyond one-fourth, under Civil Code Articles 1398 and 1402. We granted certiorari to determine whether these articles are applicable.
 

 Partition is the division or distribution into distinct physical shares of that which has been held in indivisión or in common. Any one of several co-heirs, or any one of several co-possessors, may demand division or partition of the thing which is held by common title. Partition of a succession is the division and distribution of the succession effects among the co-heirs (ab intestato or ex testamento) in proportion to their interests. La.Civ.Code Art. 1293. Planiol says:
 

 
 *667
 
 “The undivided ownership lasts until the succession is distributed. * * *
 

 * * * * * *
 

 “* * * Hence, undivided succession is the total of divided inheritance rights which have not yet been executed by the distribution of the property (cf. Vol. I, No. 2497).” Planiol, Treatise on the Civil Law (La. State Law Institute trans. 1959), Vol. III, Part 2, Nos. 2315A, 2316, p. 127.
 

 Planiol explains how indivisión ends:
 

 “The state of indivisión is terminated by partition which attributes to each owner a divided share in the thing instead of the undivided share he previously had. The tangible share which is attributed to each owner should be of a value proportionate to that of the abstract share he had in the right of ownership applicable to the thing. The partition thus localizes the right of ownership. * * *” Planiol, op. cit. supra, Vol. I, Part 2, No. 2498, p. 474.
 

 Either ownership or lawful possession by just title may support the action of partition, but the right to partition depends upon the nature of the title each heir has. La.Civ.Code Art. 1309. For example, an heir of naked ownership can demand only the distribution or division of that title (ownership); and “* * * usufructuaries [possessors] of the same estate can institute among themselves the action of partition”, La.Civ. Code Art. 1309.
 

 The purpose of partition is to do away with fractional ownership and to make perfect each co-owner’s title or ownership in individual physical shares. Therefore, partition can be effected only among
 
 all
 
 of the co-owners or
 
 all
 
 of the co-heirs of an estate. Article 1322 provides that if
 
 all
 
 the heirs are of age and
 
 present and represented,
 
 the parties may agree and perfect the partition. However, if some of the heirs are incapable of contracting or are absent and unrepresented, the law provides in Article 1323 for a judicial partition. Although a portion of a succession may, be partitioned, all of the co-heirs claiming that portion under similar title must be included.
 

 The compromise agreement in the present case did not attempt to effect a division or partition among all of the coheirs since one of the forced heirs and at least two of the testamentary heirs were not parties to the agreement. If we concede arguendo that the compromise agreement was between some of the heirs and Mrs. Ramp as a legatee of the usufruct rather than as executrix, it is readily apparent that there could be no partition since all of the heirs were not present and, since those who were parties to the contract were claiming under different titles. We find, however, that the parties to the
 
 *669
 
 agreement were in fact four of the forced heirs as “plaintiffs” and “the Succession of John J. Ramp, Sr., represented by Mrs. Mildred Machin Ramp, hereinafter referred to as ‘defendant’ ”. These parties are not “co-heirs”.
 

 It is necessary to conclude, therefore, that the compromise agreement was not a partition, and hence is not subject to rescission under Articles 1398 and 1402 of the Code.
 

 We hold that the contract at issue is a
 
 compromise,
 
 governed by Civil Code Book III, Title XVII, Articles 3071 to 3083. Article 3071 reads:
 

 “A
 
 transaction
 
 or
 
 compromise
 
 is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. * * * ”
 

 Concerning the effect of compromise the Code says in Article 3073 :
 

 “Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and
 
 they do not extend to differences which the parties never intended to include in them.
 

 “The renunciation,
 
 which is made therein to all rights, claims and pretensions,
 
 extends only to what relates to the differences on which the transaction arises."
 
 (Emphasis supplied.)
 

 , To determine the effect of the compromise, we must inquire into the differences which existed between the parties at the time of its confection, and interpret the “renunciations” made in the contract in light of “* * * the differences on which the transaction arises”.
 

 The action pending at the time of the compromise was a suit to annul a will on the ground of testamentary incapacity. This suit was filed against the succession. Mrs. Mildred Machin Ramp was named defendant as
 
 testamentary executrix,
 
 and she answered the suit in that capacity. The petition to approve the compromise settlement was signed by “attorneys for the
 
 suc
 
 cession”. The “application to compromise the claim” was advertised in accordance with Code of Civil Procedure Articles 3198 and 3229, which treat of the functions, powers, and duties of
 
 succession representatives
 
 in regard to
 
 compromise of actions against successions.
 
 The judgment in response to the application to approve the compromise ordered only “* * * that movers’ suit to annul and set aside the last will and testament of the decedent be, and the same is hereby dismissed with prejudice * * .
 

 
 *671
 
 This contract of compromise is constructed of several introductory paragraphs each commencing with the word “whereas”, and of a conclusion beginning with the word “therefore”. “Whereas” simply means “when in fact”, “considering that”, “because”, “by reason of”. The clauses of a contract which begin with the word “whereas” simply state the reasons for the confection and the mental intent of the parties. That portion of a contract which follows the word “therefore” is simply the response to the reasoning and the mental intention of the parties. As previously noted, the parties to this contract are the “plaintiffs” and “the Succession of John J. Ramp, Sr., represented by Mrs. Mildred Machín Ramp, hereinafter referred to as ‘defendant’ ”. The contract between these parties states specifically that the reason for the compromise agreement is that a suit of nullity is pending which “has unduly delayed the administration of the succession and caused considerable unnecessary expense to the estate, to the benefit of no one * * The contract concludes:
 

 “Therefore, the parties [‘plaintiffs’ and ‘defendant’] do hereby declare that they have entered into this final and binding .compromise agreement, whereby:
 

 “1.) Plaintiffs agree, and do hereby bind themselves to dismiss with prejudice the nullity suit filed by them on November 15, 1965, in C.D.C. # 440-917;
 

 “2.) Plaintiffs agree, and do hereby bind themselves to accept the succession of their father in accordance with the terms and conditions stated in his last will and testament, upon the termination of the administration of the estate.
 

 “3.) Plaintiffs agree, and do hereby bind themselves to file no further opposition to or contest of decedent’s will on any grounds whatsoever.
 

 “4.) * * *
 

 “5.) *
 
 *
 
 *
 

 “5) * * *
 

 “*
 
 * * with the understanding that this compromise cannot be final until approved by the Court * *
 

 It is clear that the “renunciations” contained in Paragraphs 2 and 3 above have no meaning and can be given no effect since they relate to differences and issues which did not exist between the parties to the contract (the heirs and the succession). It is also apparent that these two renunciations are not responsive to the “whereases”, and that hence they do not extend to or settle the differences upon which the transaction was based. The approval of the court, which fulfilled the suspensive condition in the contract, was in response to its obligation to oversee compromises of claims against
 
 successions,
 
 and it was limited to a dismissal of the nullity suit against the succession.
 

 This, then, is not a compromise between a legatee and some of the heirs, but it is
 
 *673
 
 simply a compromise by the succession through its representative of a suit and claim of some of the forced heirs. The compromise must therefore be reformed in order to effect the real intention of the parties as required under Article 3073 of the Civil Code.
 

 For these reasons the judgment of the Court of Appeal is affirmed. The relator is to pay all costs of these proceedings.
 

 HAMITER, J., concurs in the result.